## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BONNIE M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 19-CV-622-JED-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Bonnie M. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

## I.      General Legal Standards and Standard of Review

A claimant for disability benefits bears the burden of proving a disability.  42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a).  "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of her alleged disability.  20 C.F.R. §§ 404.1512(b), 416.912(b).  A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005).  Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.      Procedural History and the ALJ's Decision

In February 2015, Plaintiff, then a 42-year-old female, applied for disability insurance benefits under Title II of the Social Security Act.  R. 314-20.  Plaintiff alleges that she has been unable to work since June 2, 2013, due to generalized anxiety disorder, major depressive disorder, social anxiety disorder, and insomnia.  R. 314, 364.  Plaintiff's claim for benefits was denied initially and on reconsideration.  R. 113-42.  ALJ Luke Liter conducted an administrative hearing and issued a decision on August 2, 2017, denying benefits and finding Plaintiff not disabled through June 30, 2015, her date last insured.  R. 70-112, 146-48.  The Appeals Council remanded the case on September 27, 2018.  R. 164-65.  On remand, the ALJ conducted a second administrative hearing and again determined Plaintiff was not disabled in a decision dated February 21, 2019.  R. 10-20, 34-69.  The Appeals Council denied review, so the ALJ's February 2019 decision represents the Commissioner's final decision for purposes of this appeal.  R. 1-6; 20 C.F.R. § 404.981.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 2, 2013, through her date last insured of June 30, 2015.  R. 12.  At step two, the ALJ found Plaintiff had the following severe impairments:  bipolar disorder-two and anxiety disorder.  R. 12.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  R. 13-14.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria at step three, the ALJ summarized Plaintiff's function report as well as a third-party function report completed by her

friend/ex-boyfriend, and concluded that she had mild limitations in the four mental functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  R. 13-14.  At step four, the ALJ summarized the claimant's hearing testimony, the medical source opinion evidence, and the medical evidence in the record.  R. 15-18.  He then found that, through her date last insured, Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, with the non-exertional limitations of understanding, remembering, and carrying out simple and detailed tasks; dealing with routine supervision; relating to others in the work environment on a superficial basis; and tolerating occasional public contact.  R. 14.  Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could return to her past relevant work of data entry-funeral home.  R. 18.  The ALJ made the alternative finding at step five that Plaintiff could also perform other work in the national economy such as janitor, housekeeper, and table worker.  R. 19.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  *Id.*  Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy.  *Id.*  Accordingly, the ALJ concluded Plaintiff was not disabled.  R. 20.

## III.    Issues

Plaintiff raises the following points of error in her challenge to the denial of benefits: (1) the ALJ failed to properly evaluate the opinions of medical expert Dr. Glen Sterns, state agency psychiatrist Dr. Sally Varghese, and state agency psychologist Dr. Cynthia Kampschaefer; (2) the ALJ failed to follow the instructions of the Appeals Council because he did not assign a specific weight to the third-party function report completed by her friend/ex-boyfriend and because he did

not mention or discuss the third-party letters submitted by her family members; and (3) the ALJ

failed to pose a hypothetical to the VE that included all Plaintiff's limitations.  ECF No. 15.

## IV.    Analysis

### A.    ALJ Properly Evaluated the Medical Opinion Evidence

On May 11, 2015, state agency psychiatrist Dr. Sally Varghese completed a Psychiatric

Review Technique form wherein she found Plaintiff's mental impairments consisted of affective

disorders and anxiety disorders.  R. 120.  Using the then-applicable "paragraph B" criteria for

Listings 12.04 and 12.06, Dr. Varghese opined that Plaintiff was moderately impaired in the mental

functional areas of activities of daily living, maintaining social functioning, and maintaining

concentration, persistence, or pace.[1]  R. 120-21.  Dr. Varghese also completed a mental RFC

assessment and found Plaintiff was moderately limited in her ability to understand, remember, and

carry out detailed instructions, and to interact appropriately with the general public.  R. 122-24.

She concluded that Plaintiff could: (i) perform simple and some complex tasks with routine

supervision, (ii) relate to others on a superficial work basis and to a lesser degree the general public,

and (iii) adapt to changes and avoid hazards in a work situation.  R. 124.  Dr. Kampschaefer

affirmed Dr. Varghese's findings on review.  R. 135-37.

The ALJ called Dr. Sterns, a psychologist, to testify as a medical expert at the second

administrative hearing on February 5, 2019.  R. 36-58.  Dr. Sterns testified that Plaintiff's

diagnoses included generalized anxiety disorder, bipolar disorder II, a social anxiety disorder, and

---

[1] On September 26, 2016, the Social Security Administration issued final rules revising the criteria used to evaluate mental disorders that went into effect on January 17, 2017.  *See Revised Medical Criteria for Evaluating Mental Disorders,* 81 Fed. Reg. 66138-01 (Sept. 26, 2016).  The revised rules include changes to the "paragraph B" criteria used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  Effective January 17, 2017, the "paragraph B" criteria areas of mental functioning are: (i) understand, remember, or apply information; (ii) interact with others; (iii) concentrate, persist, or maintain pace; and (iv) adapt or manage oneself.  *See* 20 C.F.R. § 404.1520a(c)(3).

an associated problem with insomnia.  R. 41.  In assessing the revised "paragraph B" criteria for Listings 12.04 and 12.06, Dr. Sterns indicated Plaintiff had mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintain pace; and adapting or managing oneself.  R. 44-45.  He thus found the "paragraph B" criteria not satisfied.  R. 45.  Likewise, Dr. Sterns found the "paragraph C" criteria for these Listings was not satisfied because there was no evidence of an extended hospitalization for mental health treatment.  *Id.*  Accordingly, Dr. Sterns concluded Plaintiff's impairments did not meet or equal a listing.  *Id.*  Dr. Sterns opined that Plaintiff could: (i) understand, remember, and carry out detailed tasks; (ii) deal with routine supervision; (iii) relate to others on a superficial work basis and to a lesser degree the general public; (iv) adapt to change; and (v) avoid hazards.  R. 46.  In response to questioning from Plaintiff's attorney, Dr. Sterns indicated that there would be days where Plaintiff's concentration would be poor and where she could not function at the level he indicated, but that he did not believe Plaintiff would be unable to do even simple work on such days.  R. 50-54.  In response to questioning from the ALJ, Dr. Sterns explained that if Plaintiff experienced emotional lability on a particular day, she may be absent from work, less efficient, or require more breaks to handle her stress levels.  R. 53.  However, Dr. Sterns also clearly testified there was no evidence in the record of a pattern of absenteeism.  R. 53-57.

In his written opinion, the ALJ thoroughly summarized Dr. Sterns' opinions and gave them great weight because they were consistent with the medical evidence of record and because he is an expert in Social Security rules and regulations.  R. 18.  The ALJ gave little weight to the opinions of Dr. Varghese and Dr. Kampschaefer, finding the evidence of record was more consistent with Dr. Sterns' opinions.  *Id.*  The undersigned notes, however, that the functional

limitations Dr. Varghese and Dr. Kampschaefer identified are consistent with those identified by Dr. Sterns and incorporated into the RFC.  R. 14, 16, 124, 139.

Plaintiff alleges error with respect to the "paragraph B" criteria findings made by the medical sources set forth above.  ECF No. 15 at 7-15.  Specifically, she asserts the ALJ failed to discuss that Dr. Varghese and Dr. Kampschaefer found moderate limitations in the "paragraph B" criteria they assessed, whereas Dr. Sterns found mild limitations in the "paragraph B" criteria he assessed.

The undersigned finds no error in the ALJ's evaluations of the medical opinions.  Notably, as the ALJ correctly stated, "the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  R. 14.  *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *4; *Vigil v. Colvin,* 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listings of Impairments, and summarized on the [Psychiatric Review Technique Form]."  Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *4.  In this case, the ALJ thoroughly discussed the medical evidence in the record, adopted the functional limitations found by Plaintiff's medical sources, and concluded she was not disabled because not only could she could return to her past relevant work, but also because there was other work that she could perform.  *See Maestas v. Colvin,* 618 F. App'x 358, 360 (10th Cir. 2015) ("Our review of the record reflects that the ALJ properly considered all of the record evidence in reaching the RFC

determination.  We have explained that the regulations do not require direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.") (cleaned up).  Given that Plaintiff points to no functional limitations assessed by these medical sources that the ALJ excluded from the RFC, the undersigned finds no error in the ALJ's evaluation of their opinions.

### B.    ALJ Properly Evaluated the Other Source Evidence

Plaintiff contends the ALJ committed reversible error in evaluating the non-medical opinion evidence from her friend/ex-boyfriend, William Larimer, and her siblings.  ECF No. 15 at 3-7.  More specifically, she claims the ALJ did not precisely summarize or weigh Mr. Larimer's report and failed to mention or discuss the four January 2019 letters submitted by her siblings.

Social Security Ruling ("SSR") 06-03p provides the standards for evaluating evidence from "other sources" such as friends and relatives.[2]  SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  In evaluating evidence from non-medical sources such as friends and relatives, the ALJ may appropriately consider such factors as "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.* at *6.  When such an opinion "may have an effect on the outcome of the case," the ALJ should explain the weight given to the opinion or otherwise ensure that the discussion of the evidence allows a subsequent reviewer to follow his reasoning.  *Id.*  However, the ALJ is not required to make specific, written findings regarding each third-party or lay witness's statement "where the written decision reflects that the ALJ considered the testimony."  *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir. 1996).  Specific findings are also not required for lay witness statements

---

[2] SSR 06-03p was rescinded effective March 27, 2017, but it still applies to claims that were filed before that date.  *See* 82 Fed. Reg. 15263-01, 15263, 2017 WL 1105348 (Mar. 27, 2017).

that are "largely cumulative" of other evidence the ALJ discussed. *Brescia v. Astrue,* 287 Fed.

Appx. 626, 630 (10th Cir. 2008).

The undersigned finds no error in the ALJ's treatment of the non-medical opinion evidence.

The ALJ extensively recounted Mr. Larimer's April 2015 third-party function report in his written

decision at step two, and he therefore clearly considered it.  R. 14.  *See Adams,* 93 F.3d at 715

(finding the ALJ considered third-party testimony because "he specifically referred to it in his

opinion").  Plaintiff correctly points out that the ALJ did not mention or discuss her siblings'

January 2019 letters.  However, Dr. Sterns testified in the ALJ's presence that he considered such

evidence in forming his opinion, which the ALJ adopted in its entirety as the RFC.  R. 14, 45, 51.

Thus, the ALJ was aware of the letters and considered them in the RFC assessment.  Further, the

letters are cumulative of Plaintiff's own testimony and written statements, which the ALJ found

not entirely consistent with the evidence of record, and such finding is not contested on appeal.  R.

15, 17.  Even assuming that failure to mention the letters is a technical error in the ALJ's opinion

writing process, the Tenth Circuit has declined to remand for an error in the ALJ's subjective

symptom analysis where "the balance of the ALJ's [subjective symptom] analysis is supported by

substantial evidence in the record."  *Branum v. Barnhart,* 385 F.3d 1268, 1274 (10th Cir. 2004).

Here, the ALJ provided numerous reasons, supported by the record, to discount Plaintiff's

subjective symptoms.  R. 17.  Therefore, any error as to the lay witness testimony is harmless and

does not require remand.

### C.    The ALJ's Hypothetical Question to the VE

Plaintiff contends the ALJ failed to include all her limitations in the hypothetical question

posed to the VE and that his findings at steps four and five are therefore not supported by

substantial evidence.  Specifically, Plaintiff asserts that the hypothetical question should have

included limitations related to her propensity for absenteeism and her need for extra unscheduled work breaks, which she claims Dr. Sterns identified.

It is well-settled that a VE's testimony may provide substantial evidence to support an ALJ's findings regarding the jobs a claimant can perform *only* where the hypothetical posed to the VE "reflect[s] with precision all of [the claimant's] impairments" and functional limitations that are "borne out by the evidentiary record." *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996).

The undersigned finds no step four error and no error in the ALJ's hypothetical question at step five. Plaintiff's assertion that Dr. Sterns identified limitations related to a propensity for absenteeism and need for extra breaks is not an accurate reflection of his opinion. Rather, Dr. Sterns testified that emotional lability *could* cause Plaintiff to be absent from work, to function less efficiently, or to require more frequent breaks, but would not preclude all work. R. 50, 53. Dr. Sterns also testified that there was no evidence in the record of Plaintiff's propensity to be absent from work on a regular basis. R. 53-57. The ALJ properly considered Dr. Sterns' opinions as set forth above, and Plaintiff does not point to other evidence prior to her date last insured to support the claimed limitations. Accordingly, the ALJ was not required to include additional limitations in the hypothetical question posed to the VE, and the VE's testimony constitutes substantial evidence supporting his decision. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

**OBJECTION**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by May 10, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 26th day of April, 2021.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

11