IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BONNIE M., | ) |
| | ) |
| Plaintiff, | ) Case No. 19-CV-0622-CVE-JFJ |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the report and recommendation (R&R) (Dkt. # 22) of United States Magistrate Judge Jodi F. Jayne on review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying the plaintiff disability benefits. The magistrate judge recommends that the Court affirm the Commissioner's denial of plaintiff's application for benefits. Plaintiff filed a timely objection (Dkt. # 23) to the R&R, and she requests that the Court reject the R&R and remand for further administrative proceedings. The Commissioner filed a response to the objection (Dkt. # 24), arguing that the R&R should be accepted. Reviewing the objection de novo, the Court has considered the administrative record (Dkt. # 9), the parties' briefs, the R&R, and plaintiff's objection, and concludes that the R&R should be rejected, and the case should be remanded for further administrative proceedings.

---

[1] Effective July 11, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I.

Plaintiff was 42-years old when she applied for Title II disability insurance benefits on February 11, 2015, alleging disability as of June 2, 2013, due to generalized anxiety disorder, major depressive disorder, social anxiety disorder, and insomnia. Dkt. # 9, at 314, 364. The Commissioner denied plaintiff's application for benefits on May 12, 2015, and on reconsideration on September 3, 2015. Id. at 113-42. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), who conducted the hearing on May 11, 2017. Id. at 70-112. The ALJ issued a decision on August 2, 2017, denying benefits and finding plaintiff not disabled through the last date insured. Id. at 146-58. The Appeals Council granted review of the ALJ's first decision and remanded the case to the ALJ with instructions on September 27, 2018. Id. at 163-66. The ALJ conducted a second hearing on February 5, 2019. Id. at 34-69. The ALJ issued a second decision denying benefits on February 21, 2019, again finding that plaintiff was not disabled within the meaning of the Social Security Act through her last date insured. Id. at 7-27. The Appeals Council denied a review of the second decision, and plaintiff appealed. Id. at 1-6; Dkt. # 2.

## II.

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Fowler v.

Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989)). "It is 'more than a scintilla, but less than a preponderance.'" Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Martinez v. Barnhart, 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).

A party's right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which provides that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059-60 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule when the plaintiff's objection to the report and recommendation merely asserted a series of errors without explaining why the magistrate's reasoning was erroneous. See Zumwalt v. Astrue, 220 F. App'x 770, 777-78 (10th Cir. 2007).[2]

### III.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.

---

[2] This and other cited unpublished decisions are not precedential but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)). "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) "to perform work in the national economy, given the claimant's age, education, and work experience." Id. (quoting Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine whether the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988). The Court "must 'meticulously examine the record;" as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994) (quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)).

## IV.

In the first decision, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 2, 2013. Dkt. # 10, at 148. At step two, the ALJ found that plaintiff had the following severe impairments: major depressive disorder and anxiety disorder. Id. at 149. The ALJ found that plaintiff did not have any severe physical impairments. Id. At step three, the ALJ found that plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Id. at 150. In assessing plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that plaintiff had moderate limitations in the four areas of (1) interacting with others; (2) concentrating, persisting, or maintaining pace; (3) understanding, remembering, or applying information; and (4) adapting or managing oneself. Id. at 150-51.

After evaluating the objective and opinion evidence, and plaintiff's statements, the ALJ concluded in the first decision that plaintiff has the RFC to perform work "at all exertional levels but with the following non-exertional limitations[:] The claimant could understand, remember, and carry out simple and some complex tasks. The claimant could tolerate superficial contact with coworkers and supervisors, but [public] contact should not have been required for successful completion of the job duties." Id. at 152. At step four, the ALJ found that plaintiff could not perform any past relevant work. Id. at 156-57. Based on the testimony of a vocational expert (VE), however, the ALJ found at step five that plaintiff could perform other light, unskilled work, such as office helper, food preparation worker, or hand packager. Id. at 157-58. The ALJ determined that the VE's testimony reflected the information in the Dictionary of Occupational Titles (DOT). Id. at 158. Based on the VE's testimony, the ALJ concluded that these positions existed in significant numbers in the national economy. Id. Accordingly, the ALJ concluded that plaintiff was not disabled.

The Appeals Council granted review of the ALJ's first decision. Id. at 164-65. The Appeals Council vacated the ALJ's first decision because of the following errors:

- The residual functional capacity (RFC) finding is unclear. The RFC provides the claimant can understand, remember, and carry out "simple and some complex tasks." It is unclear which complex tasks the claimant retains the capacity to perform. Furthermore, the RFC does not adequately reflect a finding of moderate difficulties in concentration, persistence, or pace. . . . Further consideration of the mental residual functional capacity is warranted.

- In correspondence received by the hearing office on May 2, 2017, the claimant's representative informed the hearing office of existing medical evidence that had been requested from four sources . . . . This notice was provided more than five business days prior to the May 11, 2017 hearing. Several months prior to the issuance of the decision, the claimant submitted evidence from two of the sources for which notice was provided . . . . Under such circumstances, the Administrative Law Judge is required to "accept and consider the evidence when it is received" . . . . Accordingly, further proceedings are warranted.

Id. (citations omitted). The Appeals Council then remanded the case to the ALJ with the following instructions:

- Admit to the record and consider all evidence the claimant informs of or submits at least five business days before the scheduled hearing (20 CFR 404.935(a); HALLEX I-2-5-13 A. Note 1).

- Further consider the claimant's residual functional capacity during the entire period at issue, and provide rationale with specific references to evidence of record in support of assessed limitations (20 CFR 404.1545; Social Security Rulings 85-16 and 96-8p). In doing so, evaluate all medical opinions, and explain the weight given to such opinion evidence. In addition, consider the statements of all non-acceptable medical sources and all nonmedical sources when evaluating the severity and functional effects of the medically determinable impairments (20 CFR 404.1527). . . .

Id. at 165. The Appeals Council directed the ALJ to "take any further action needed to update and complete the administrative record" in compliance with its instruction. Id.

At step one in the second decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 2, 2013. Id. at 12. At step two, the

6

ALJ found that plaintiff had the following severe impairments: bipolar disorder-two and anxiety disorder. Id. The ALJ found that plaintiff did not have any severe physical impairments. Id. At step three, the ALJ found that plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Id. at 13. In assessing plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that plaintiff had mild limitations in the four areas of (1) interacting with others; (2) concentrating, persisting, or maintaining pace; (3) understanding, remembering, or applying information; and (4) adapting or managing oneself. Id. at 13-14.

After evaluating the objective and opinion evidence, and plaintiff's statements, the ALJ concluded in the second decision that plaintiff has the RFC to perform a "full range of work" subject to the following non-exertional limitations:

> The claimant could have understood, remembered, and carried out simple tasks and detailed tasks. However, the claimant would not have been able to perform complex tasks. The claimant could have dealt with routine supervision. The claimant could have related to others in the work environment on a superficial basis. The claimant could have tolerated occasional public contact.

Id. at 14. At step four, the ALJ found that, based on the testimony of a vocational expert (VE), plaintiff could perform past relevant work in data entry-funeral home. Id. at 18. Alternatively, at step five, the ALJ found that, according to the VE, plaintiff could perform other light, unskilled work, such as janitor, housekeeper, and table worker. Id. at 19. The ALJ determined that the VE's testimony reflected the information in the Dictionary of Occupational Titles (DOT). Id. at 19. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. Id. at 19-20. Accordingly, the ALJ concluded that plaintiff was not disabled.

The Appeals Council denied review of the second decision because the plaintiff's additional evidence submitted from Dr. Diana Chen, dated June 27, 2019 did "not relate to the

period at issue" and thus did "not affect the decision" about plaintiff's disability as of June 30, 2015. Id. at 2.

V.

Plaintiff raised three points of error in her opening brief before the magistrate judge: (1) the ALJ failed to comply with the Appeals Council instructions; (2) the ALJ failed to properly consider the testimony of the medical expert, other medical sources, and how they conflicted; and (3) the ALJ's step four and five findings are flawed. Dkt. # 15. Plaintiff's objection to the R&R reiterates these arguments. Dkt. # 23.

A.   **ALJ Failure to Comply With Appeals Council Instruction**

In her opening brief, plaintiff stated that the ALJ failed to comply with the instructions from the Appeals Council in its order remanding the case to the ALJ. Dkt. # 15, at 2-7. Specifically, plaintiff asserted that the ALJ's second decision neglected to mention—much less, consider—four third-party letters from nonmedical sources. Id. at 5-6. Plaintiff also complained that pages from the third-party function report from her ex-boyfriend, William Larimer, were missing from the record—a fact that is underscored by the ALJ's incongruent treatment of the same report between his two decisions.[3] Id. at 3. Plaintiff highlighted the language of the remand order, in which the Appeals Council instructed the ALJ to "consider all evidence the claimant informs of or submits at least five days before the scheduled hearing." Id. at 7 (quoting Dkt. # 9, at 165).

---

[3] In the first decision, the ALJ summarized Larimer's report by discussing Larimer's observations about plaintiff's difficulties with "functional abilities . . . handling stress . . . [and] work[ing] a regular work schedule." Dkt. # 9, at 155. In the second decision, the ALJ summarized Larimer's report by recounting the tasks that plaintiff was capable of performing without assistance or reminders, such as cleaning, preparing meals, driving, shopping, handling bills and bank accounts, and working out at the gym; also, the ALJ wrote that Larimer found it "difficult to say how [plaintiff] managed stress." Id. at 14.

The magistrate judge framed plaintiff's complaint as the ALJ failing to "precisely summarize or weigh Mr. Larimer's report and fail[ing] to mention or discuss the four January 2019 letters submitted by [plaintiff's] siblings." Dkt. # 22, at 8. To that end, the magistrate judge found no error in the ALJ's treatment of the lay witness evidence. Id. at 9. Regarding Larimer's report, the magistrate judge wrote that, because the ALJ "extensively recounted" it at step two of the written decision, the ALJ "clearly considered it." Id. (citing Dkt. # 9, at 14; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996)).

With respect to the four third-party letters, the magistrate judge acknowledged that the ALJ failed to reference or mention the letters in the decision. Dkt. # 22, at 9 ("Plaintiff correctly points out that the ALJ did not mention or discuss her siblings' January 2019 letters."). However, the magistrate judge couched this as a "technical error" that did not give rise to reversible error. Id. First, the magistrate judge reasoned that the ALJ considered the letters in forming the RFC because Dr. Sterns (the medical expert) "testified in the ALJ's presence that he considered such evidence in forming his opinion, which the ALJ adopted in its entirety as the RFC." Id. Moreover, the magistrate judge explained that the letters were "cumulative of [p]laintiff's own testimony and written statements," id.—despite the fact that the ALJ made no such finding in his written decision or at the hearing, Dkt. # 9, at 10-21; 34-69. Finally, the magistrate judge observed that the Tenth Circuit "has declined to remand for error in the ALJ's subjective symptom analysis where 'the balance of the ALJ's [subjective symptom] analysis is supported by substantial evidence.'" Id.

9

(quoting Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).[4] Accordingly, the magistrate judge found that "any error as to lay witness testimony is harmless and does not require remand." Id.

In her objection to the R&R, plaintiff points out that the magistrate judge's analysis did not address the thrust of her argument, namely, that the ALJ failed to adhere to the Appeals Council mandate precisely because the ALJ failed to "*consider the statements of . . . all nonmedical sources.*" Dkt. # 23, at 1 (quoting Dkt. # 9, at 165) (emphasis original). While highlighting the fact that the R&R did not address the missing pages of Larimer's report, plaintiff also suggests that the remand order directs that the ALJ explain the weight given to each nonmedical source in his consideration of plaintiff's RFC. Id. at 2 ("[The magistrate judge] ignores that, although specifically directed by the Appeals Council to weigh Mr. Larimer's report, the ALJ failed to do so.").[5] The Commissioner's response also acknowledges that the R&R failed to answer the question of whether the ALJ complied with the Appeals Council remand order. Dkt. # 24, at 1-2 ("The Report does not address the . . . issue head-on, instead essentially finding that the ALJ adequately considered the evidence and it was irrelevant whether [the ALJ] complied with the Appeals Council's direction.").

---

[4] The Court notes that the issue before the Branum court does not apply to this case. Whereas the issue in this case is the ALJ's failure to consider lay witness evidence as instructed by the Appeals Council, the issue in Branum was whether the ALJ "improperly discredited claimant's subjective complaints regarding [] back pain." Branum, 385 F.3d at 1270. After examining the ALJ's three-prong subjective pain inquiry, the Branum court held, "[w]hile we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." Id.

[5] The Court notes that the remand order makes no specific reference to Larimer's report or that the ALJ must explain the weight assigned to nonmedical sources. However, the court interprets plaintiff's statement to be arguing that the remand order requires the ALJ to provide an additional layer of analysis when considering lay witness evidence.

10

The Tenth Circuit recently addressed the issue of a reviewing court's oversight of compliance with Appeals Council orders in Noreja v. Comm'r, SSA, 952 F.3d 1172 (10th Cir. 2020). In affirming a court's authority to review the record for compliance with Appeals Council directives, the court in Noreja held that Appeals Council instructions to an ALJ "often implicate conformity with a proof-related rule or regulation" and are in of themselves "legal requirements with which the ALJ is bound to comply." Id. at 1179. To that end, when the instructions "direct[] the ALJ to take additional or different steps to build or evaluate the record, then the remand order supplements or affirms the rules shaping the evidence that is available or pertinent to the claimant." Id. at 1179-80. Thus, in light of the decision in Noreja, this court must ascertain whether the ALJ's alleged violation of Appeals Council orders rendered his decision legally or factually unsupportable as a part of its review under 42 U.S.C. § 405(g). Id. at 1178.

While the court in Noreja found that the ALJ did not violate the Appeals Council remand orders, its reasoning is instructive. In Noreja, the plaintiff claimed that the ALJ violated the instructions of an Appeals Council remand order by failing to obtain an additional consultative mental examination. Id. at 1180. The relevant language in the Appeals Council order directed the ALJ to "[o]btain additional evidence . . . in accordance with the regulatory standards" and that the "additional evidence should include, if available, a consultative mental examination." Id. at 1175. After surveying the regulatory standards cited by the Appeals Council in its remand order, the Noreja court found that the only mandatory directive from the Appeals Council was to obtain additional evidence. Id. Conversely, the court noted, the Appeals Council merely stated that a consultative mental examination "should" be acquired, which is permissive rather than mandatory. Id. Because the ALJ had gathered additional evidence from the first hearing, the court concluded that he had satisfied the limited directive from the Appeals Council. Id. ("The ALJ not only

11

complied with the remand order by obtaining additional proof, but also supported her denial of Noreja's application for disability benefits with substantial evidence.").

Guided by the analysis in Noreja, the Court first turns its attention to the language of the remand order and the regulatory standards cited within it. Specifically, unlike the permissive language in the Noreja remand order, the operative language in this case is mandatory and directs the ALJ to "further consider" the plaintiff's RFC and "provide rationale with specific references to evidence of record in support of assessed limitations." Dkt. # 9, at 165. The order then specifies the proper standards under which the evidence of record should be evaluated: "evaluate all medical opinions, and explain the weight given . . . [i]n addition, consider the statements of . . . all nonmedical sources when evaluating the severity and functional effects of the medically determinable impairments." Id. While the cited regulatory standard for evaluating evidence provides that "[t]he adjudicator *generally should explain* the weight given to opinions from [medical and nonmedical] sources," 20 CFR § 404.1527(f) (emphasis added), the remand order directs the ALJ to consider the statements of *all* nonmedical sources when explaining his rationale for the assessed limitations. Thus, the remand order directives amount to a heightened articulation requirement for the ALJ to follow in discussing his RFC findings and limitations, thereby supplementing the "rules shaping the evidence that is available or pertinent to the claimant." Noreja, 952 F.3d at 1180.

Because the ALJ must "provide rationale with specific references to evidence of record in support of assessed limitations" by considering "statements of all nonmedical sources," Dkt. # 9, at 165, the ALJ must square any statements that are inconsistent with his assessed findings. This necessarily means that, if the ALJ chooses to reject nonmedical source evidence related to the severity of plaintiff's impairments or the limitations on her ability to work that are inconsistent

12

with the ALJ's RFC findings, the ALJ must provide reasons for rejecting such evidence that is specific to each statement. Given that the ALJ patently omitted lay witness evidence from his decision, and that entire portions of a third-party function report were not included in the record, the Court finds that the ALJ has failed to adhere to the Appeals Council instructions.

The Commissioner argues that, while the ALJ must consider all the evidence, the ALJ is not required to discuss every piece of evidence. Dkt. # 19, at 6 (citing Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996)). While that may be true, it states only part of the rule. In this Circuit, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Such significantly probative evidence may include lay witness testimony." Kimes v. Comm'r, SSA, 817 F. App'x 654, 659 (10th Cir. 2020) (citing Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006)). The Clifton court further stated, "*a minimal level of articulation* of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." Clifton, 79 F.3d at 1010 (quoting Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir.1984)).

Here, the ALJ discarded, without comment, four statements directly related to the plaintiff's limitations, all of which provided observational insight into plaintiff's functional deterioration and inability to maintain a regular schedule due to anxiety, paranoia, and insomnia. Dkt. # 9, at 493-98. Plaintiff's sister, Sandy, writes that plaintiff's disability "has been spiraling deeper . . . to the point of not being able to tackle and complete tasks," which Sandy views as particularly impactful on plaintiff's "absenteeism and effectiveness" in the workplace. Id. at 494. Plaintiff's brother, Victor, writes that plaintiff struggles to maintain a consistent schedule, is

13

combative in conversations with family and friends, and has difficulty in completing simple tasks. Id. at 496. Plaintiff's sister, Mary, states that plaintiff will call at all hours of the night and is virtually unreachable until the afternoon, and when they do converse over the phone, plaintiff talks for long periods of time with erratic emotional oscillations. Id. at 497. Plaintiff's brother-in-law, Mauri, has observed "very disturbing changes to plaintiff's personality," noting plaintiff's spontaneous and unprovoked outbursts of anger with family, friends, and service providers over "mundane communications;" these behavioral issues, Mauri writes, "have caused these people to cut ties with her." Id. at 498.

Given that the VE testified that plaintiff's inability to maintain a regular schedule "at least two days a month" would eliminate competitive employment, id. at 68, and that the medical expert agreed that he would infer plaintiff's absence from work "at least a few days each month" due to her impairments, id. at 54, the lay witness statements are probative insofar as they facilitate reasonable inferences regarding plaintiff's absenteeism and the maximum plaintiff could perform in a work setting within a given month. While the ALJ is free to reject or not rely upon the lay witness evidence in determining the severity of plaintiff's impairments or her functional limitations, there is no doubt that the statements are significantly probative, and they cannot be discarded without comment. The ALJ's failure to provide minimal articulation regarding the lay witness evidence robs the ALJ's decision of substantial evidence. Blea, 466 F.3d at 915 (10th Cir. 2006) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant [nonmedical] evidence, we cannot determine whether his conclusion[s] ... [are] supported by substantial evidence.") (quoting Threet v. Barnhart, 353 F.3d 1185, 1190 (10th Cir. 2003) (second and third alterations in original)).

Thus, in this case, the ALJ's rejection of the lay witness evidence without comment would be fatal, even without the Appeals Council remand order. See Blea, 466 F.3d at 915 (ALJ's rejection of uncontroverted lay witness statement that corroborated medical evidence without comment required remand because the court could not determine whether ALJ's reasons for rejecting the probative evidence was supported by substantial evidence). It is even more problematic given the heightened rules on the evidence evaluation from the Appeals Council remand order, i.e., rejecting lay witness evidence without comment specific to each lay witness statement.

**B.    Harmless Error**

The Commissioner also insists that any error by the ALJ in failing to articulate or discuss the lay witness evidence is harmless because the Court can still follow the ALJ's reasoning despite his omitting the lay witness evidence in the written decision. Dkt. # 19, at 6-7. The Commissioner cites Best-Willie v. Covin, 514 F. App'x 728, 736 (10th Cir. 2013), in arguing that failure to address lay witness evidence is harmless because it is cumulative of the claimant's testimony, which was expressly discredited by the ALJ. Id. at 7. The Commissioner adds that the ALJ gave great weight to the medical expert, whose testimony was inconsistent with the lay witness statements. Id.

The Court is not persuaded by this argument. Best-Willie is not precedent in this circuit, and it is not persuasive in this instance. The Best-Willie court quoted the Eighth Circuit case of Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011), in holding that an ALJ's failure to expressly address lay witness testimony is harmless error when "the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." Best-Willie, 514 F. App'x at 736. However, the Eight Circuit has held that the Buckner rule does not apply to cases

15

in which the omission of lay witness testimony is "coupled with other 'errors and uncertainties in the opinion.'" Nowling v. Colvin, 813 F.3d 1110, 1121 (8th Cir. 2016) (quoting Willcockson v. Astrue, 540 F.3d 878, 880 (8th Cir. 2008)). In this case, there is an uncertainty regarding plaintiff's ability to maintain a consistent work schedule and absenteeism. The medical expert testified that he would infer from plaintiff's impairments that there would be at least a few days each month in which she would not be capable of functioning at the assessed RFC. Dkt. # 9, at 53-54. After being pressed by the ALJ, the medical expert hedged his testimony by stating that there was no evidence specifically related to plaintiff's absenteeism in the record.[6] Id. at 57-58. The ALJ did not include absenteeism in the RFC finding, despite the medical expert's equivocal testimony, because absenteeism based on plaintiff's impairments is inferred. Id. at 17. The lay witness testimony would certainly be probative in evaluating plaintiff's ability to function in a work-setting on a consistent basis and may alter the ALJ's RFC analysis by amplifying the medical expert's reasonable inferences regarding plaintiff's absenteeism. Thus, the uncertainties in the record render application of the Buckner rule, as cited by the Tenth Circuit, inapposite to the present case.

Furthermore, the ALJ's omission of lay witness evidence directly implicates the Appeals Council instructions, which directed the ALJ to further develop the record with respect to plaintiff's RFC by supporting the assessed limitations with specific cites to the record, and in so doing, to consider all statements from nonmedical sources.

Finally, the finding of harmless error would require the Court to make a finding that the third-party statements are cumulative of plaintiff's testimony. There are two problems with this.

---

[6] The Court notes that the onset of plaintiff's disability coincided with plaintiff leaving her last employment, Dkt. # 9, at 12 (plaintiff "did not engage in substantial gainful activity during the period of her alleged onset date of June 2, 2013 through her date last insured of June 30, 2015"). Thus, it is impossible to establish from the record plaintiff's absenteeism from work.

First, the letters are not cumulative. Plaintiff reported that she "get[s] along well" with authority figures, such as bosses, Dkt. # 9, at 395, and that her problems in getting along with others related to having a work ethic that makes others "look bad so they find insignificant things" by which to judge her, id. at 394. Mr. Larimer, on the other hand, reports that plaintiff has "had problems getting along with her bosses in most of the jobs she's had," id. at 383, and plaintiff's family reports that she has alienated her acquaintances, friends, and family due to her emotional dysregulation, id. at 493, 496, 497, and 498. Thus, while there is overlap between plaintiff's testimony and the lay witness evidence, they are not identical and cumulative as was the case in Best-Willie. Second, imputing a finding that the lay witness statements are all cumulative of plaintiff's testimony, especially where the evidence regarding absenteeism is mixed, would be an impermissible post hoc rationalization for the ALJ's decision. Carpenter v. Astrue, 537 F.3d 1264, 1267 (10th Cir. 2008) ("judicial review is limited to the reasons stated in the ALJ's decision"); Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (the court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). Accordingly, the Court does not find this case to be an "exceptional circumstance" in which the Court can say with confidence that no reasonable factfinder could have resolved the matter in any other way. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

Because the ALJ failed to address the relevant lay witness testimony in his findings regarding the severity of plaintiff's impairments and her functional limitations, the ALJ's decision must be remanded to the ALJ for further proceedings consistent with this opinion. Blea, 466 F.3d at 915 ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.") (quoting Baker v. Bowen, 886 F.2d 289, 291 (10th Cir. 1989)); Clifton, 79 F.3d at 1010

("Therefore, the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at step three."); Kimes, 817 F. App'x at 659 (lay witness testimony about contemporaneous observations of claimant "may be of particular relevance" for evaluation on remand).[7]

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 22) is **rejected**, and the decision of the Commissioner of the Social Security Administration is **reversed** and **remanded**. A separate judgment is entered herewith.

**DATED** this 15th day of October, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[7] Because the plaintiff's remaining arguments may be affected by the ALJ's review on remand, the Court does not address those issues. However, the Court notes, without deciding, that the record on plaintiff's absenteeism is far from clear. Punctuality and regular attendance within customary tolerances are elements of competitive employment. SSA POMS DI 25020.010.B.3 (noting that the tolerances are usually strict). While the ALJ relied on plaintiff's consistency in working out to infer that plaintiff has no pattern of absenteeism, Dkt. # 9, at 17, consistent exercise is not set according to a specific schedule and, therefore, does not directly translate to a work setting in which scheduling and attendance are strictly regimented. Moreover, as the medical expert testified, plaintiff's emotional lability would be more regulated when regularly exercising, Dkt. # 9, at 56, but it is not clear how a regular work schedule would impact plaintiff's ability to regularly exercise. Thus, further clarification on the plaintiff's absenteeism and its impact on plaintiff's RFC would be helpful for a reviewing court's substantial evidence review.